**Richard Lee FORD, Petitioner–Appellee,**

v.

**Barry GAITHER, Warden and Michael Bowers, Respondents–Appellants.**

**No. 90–9055.**

United States Court of Appeals, Eleventh Circuit.

Feb. 18, 1992.

Susan B. Boleyn, Atlanta, Ga., for respondents-appellants.

Suzanne Hashimi, Federal Defender Program, Inc., Atlanta, Ga., for petitioner-appellee.

Before JOHNSON *, CLARK *, and PECK **, Senior Circuit Judges.

* See Rule 34–2(b), U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

JOHN W. PECK, Senior Circuit Judge:

This appeal arises from the district court's grant of Richard Lee Ford's habeas petition on the grounds that Ford was denied due process and a fair trial because the trial court failed to obtain a psychiatric evaluation of his sanity at the time of his offense. For the reasons stated below, we affirm the district court.

## FACTS

On June 24, 1979, Young Hui Griffin was found stabbed to death in her Atlanta apartment. In November 1979, Petitioner Richard Lee Ford told the Chief of Police of Hapeville, Georgia, that he had experienced visions about the stabbing death of an Oriental woman. The Atlanta police were notified and Ford was questioned. Eventually, he supplied unpublished details of the murder. Subsequently, he was indicted for Griffin's murder.

A public defender was appointed to represent Ford. Pursuant to a motion from Ford's attorney, the trial judge issued an order for a psychiatric evaluation to determine:

(a) Whether or not defendant was mentally competent at the time of the alleged offense of murder, and

(b) Whether defendant is competent to counsel with his attorney and is competent to stand trial.

Dr. Lloyd Baccus, a psychiatrist, examined Ford and diagnosed him with schizophrenia, paranoid type. Additionally, Dr. Baccus found that Ford would be unable to consistently or effectively communicate with counsel. In response to questions about Ford's mental status at the time of the murder, Dr. Baccus reported only that Ford stated that he had last seen the victim at a bar, that he had heard about her murder a few days later, and that he had a vision of what happened to her.

Pursuant to a special plea of insanity, Ford was admitted to a state hospital where he was treated by Dr. Louis Jacobs. In June 1980, Dr. Jacobs informed the court that Ford suffered from "chronic, paranoid psychotic illness manifested by auditory hallucinations, visions, very poor reality contact, hearing spirits, seeing spirits of the dead coming to him and talking to him and, in general, no real appreciation of the reality of his current legal situation." However, in November 1980, Dr. Jacobs notified the court that Ford had improved to the point that he had an understanding of his legal situation and could cooperate with his attorney in formulating a defense. Ford was returned to the court's custody.

In January 1981, Ford's new court-appointed attorney, Michael Bergin, questioned his client's competency to stand trial and filed a motion for another psychiatric examination. The court granted the motion and Dr. Baccus examined Ford again. While Dr. Baccus diagnosed Ford with schizophrenia, residual type, he found that Ford was knowledgeable of the charges against him and possessed the intellectual and communicative skills necessary to assist his attorney in his defense.

Ford proceeded to trial using a delusional compulsion defense. Dr. Baccus testified that he had insufficient time to make an assessment of Ford's competency at the time of the murder. Dr. Jacobs also had not made such a determination. Ford was convicted of murder in March 1981 and sentenced to life in prison.

Ford filed a habeas petition in state court which was denied in October 1983. His application for a certificate of probable cause to appeal was denied by the Georgia Supreme Court in January 1984. Ford then filed a federal habeas petition. In April 1986, a magistrate conducted an evidentiary hearing. At the hearing, Ford's second attorney testified that he had made a third oral request for an examination by another doctor which the trial judge denied. However, no such request appears in the record. The federal petition was ultimately dismissed for failure to exhaust state remedies in December 1986. Subsequently, Ford filed a second state habeas petition. With regard to the issue of denial of an adequate psychiatric evaluation, the state court concluded that Ford had received the examination to which he was entitled and fair treatment by the trial court. Ford's

application for a certificate of probable cause to appeal was dismissed by the Georgia Supreme Court in June 1988. In August 1988, Ford filed a second federal habeas petition alleging that he was denied due process because the trial court failed to obtain an adequate psychiatric evaluation of his sanity at the time of the offense. In May 1990, a magistrate recommended that Ford's petition be granted. The district court adopted the magistrate's recommendation. Respondent appealed.

## ANALYSIS

In *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court held that:

> when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Id.* at 83, 105 S.Ct. at 1096.

While Respondent acknowledges the holding of *Ake,* he argues that the district court's decision to grant relief was based on an erroneous factual predicate and that Ford received all the process due him. Specifically, Respondent takes issue with the following statements in the magistrate's report:

> In this case it is clear that [Ford's] counsel requested a psychiatric examination to determine [Ford's] sanity at the time of the killing at the earliest opportunity, and renewed his request constantly. The trial court's actions in denying that request constitute a denial of due process and a fair trial.

Respondent asserts that there were only two requests for psychiatric evaluation and that each time all the requested relief was granted. The first court order requested determinations of competency at the time of the murder and competency to stand trial. With regard to Ford's mental status at the time of the offense, Dr. Baccus merely reported Ford's account of last seeing the victim at the bar and later having visions about what happened to her. Respondent contends that this response is sufficient to fulfill the court's order. Respondent argues further that the motion for reexamination made by Ford's second attorney requested only a determination of Ford's competency to stand trial—not competency at the time of the offense. Respondent notes that any further request is not reflected in the record. Thus, Respondent concludes that the trial court complied with its obligation under *Ake, supra.* We cannot agree.

▉ With regard to Respondent's allegation that the district court based its conclusion on a clearly erroneous factual predicate, we note that Federal Rule of Civil Procedure 52(a) provides that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." This Court has observed that "[t]his deferential standard of review imposes an especially heavy burden on an appellant in a case in which the evidence is largely testimonial, and the district court has the advantage of observing the witnesses and evaluating their credibility firsthand." *Thelma C. Raley, Inc. v. Kleppe,* 867 F.2d 1326, 1328 (11th Cir.1989).

▉ In this case, the magistrate who granted Ford's petition in 1990 had held an evidentiary hearing in 1986 in connection with a previous habeas petition. At the evidentiary hearing, Ford's attorney testified that he had made a third oral request for a psychiatric evaluation and that the trial judge had denied it. Since the written record is silent on this point, we must rely on the magistrate's observation of the testimony of Ford's attorney and his assessment that it was credible. Therefore, we cannot say that the magistrate's finding that counsel renewed his request for an evaluation of Ford's sanity at the time of the murder is clearly erroneous.

Furthermore, we cannot agree with Respondent's narrow and technical interpretation of *Ake, supra.* In *Ake,* the Supreme Court grounded its ruling on the constitutional guarantee of fundamental fairness.

470 U.S. at 76, 105 S.Ct. at 1092–93. To comport with this standard, the Court required the State *"at a minimum,* [to] assure the defendant access to a competent psychiatrist who will conduct an *appropriate* examination and *assist in evaluation, preparation, and presentation of the defense." Id.* at 83, 105 S.Ct. at 1096. (emphasis added). Despite this language, Respondent would have this court rule that the psychiatrists' inquiry into the events of the day of the murder resulting only in Ford giving a historical account of the day constitutes an adequate assessment of Ford's mental status at the time of the murder.

We cannot agree with Respondent's contention. First, at trial, neither doctor was able to offer an assessment of Ford's competency at the time of the murder. Second, *Ake, supra,* requires an *appropriate* psychiatric evaluation and assistance in the evaluation, preparation, and presentation of the defense. Since Ford proceeded on a delusional compulsion defense, we cannot call a psychiatric evaluation which lacked an assessment of Ford's mental state at the time of the offense appropriate under the circumstances. Similarly, it is difficult to understand how psychiatrists who did not make such a determination could have offered much assistance on the "evaluation, preparation, and presentation of the defense" of delusional compulsion. In *Ake, supra,* the Court cautioned that without a psychiatrist "to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable," and to offer other professional assistance, "an inaccurate resolution of sanity issues is extremely high." 470 U.S. at 82, 105 S.Ct. at 1096. Clearly, the issue of whether Ford was competent at the time of the murder was relevant to his defense. Although Dr. Baccus answered a hypothetical question on the subject, no expert testimony was received on the vital issue of Ford's mental status at the time of the murder. Accordingly, we conclude that the trial court's failure to order a third examination including an assessment as to Ford's competency at the time of the murder greatly hindered Ford's defense in violation of due process. This conclusion is consistent with recent precedent in this circuit. *Cowley v. Stricklin,* 929 F.2d 640, 645 (11th Cir.1991) (testimony of psychologist who could not testify as to defendant's competency to stand trial or at the time of the offense was not sufficient substitute for the provision of an adequate defense psychiatrist as required by *Ake, supra* ); *Blake v. Kemp,* 758 F.2d 523, 529–33 (11th Cir.) *cert. denied,* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985) (psychiatric examination which failed to ascertain the mental status of the defendant at the time of the crime was insufficient under *Ake* ). Therefore, the district court's grant of Ford's habeas petition conditioned on the State having 120 days to retry him is

AFFIRMED.