Daniel Lee Siebert appeals from the circuit court's denial of his two petitions for postconviction relief filed pursuant to Rule 32, A.R.Crim.P. The petitions, which the circuit court consolidated for review, challenged two capital murder convictions and sentences of death by electrocution.
On September 11, 1986, the Talladega County grand jury returned two indictments against Daniel Siebert, each charging capital murder. One indictment concerned the deaths of Siebert's 24-year-old hearing-impaired girlfriend, Sherri Weathers, and her two sons, five-year-old Chad Weathers, and four-year-old Joseph Weathers. The other indictment concerned the death of Sherri Weather's hearing-impaired friend and next door neighbor, *Page 844 
Linda Jarman.[1] On March 19, 1987, Siebert was convicted in the Talladega *Page 845 
County Circuit Court for the capital murder of Linda Jarman (hereinafter referred to as "the Talladega County case"). This murder was made capital because it occurred during the course of a robbery, § 13A-5-40(a)(2), Ala. Code 1975. On April 17, 1987, the trial court followed the jury's recommendation and sentenced Siebert to death.
Because of the pretrial publicity the trial court granted Siebert's motion for a change of venue as to the charges contained in the indictment charging Siebert with the killing of the Weathers family. Thus, Siebert's capital prosecution for the murder of Sherri Weathers and her two young sons was transferred to Lee County. (That case is hereinafter referred to as "the Lee County case.") Judge William C. Sullivan, who presided over the Talladega County case, also presided over the Lee County case. On June 18, 1987, Siebert was convicted of murder made capital pursuant to § 13A-5-40(a)(10), Ala. Code 1975, because two or more persons were murdered pursuant to one scheme or course of conduct. On August 19, 1987, following the jury's recommendation, the trial court sentenced Siebert to death by electrocution.
The Alabama Court of Criminal Appeals affirmed the conviction and the sentence in the Lee County case. Siebert v. State,555 So.2d 772 (Ala.Cr.App. 1989). The Alabama Supreme court affirmed the conviction, Ex parte Siebert, 555 So.2d 780 (Ala. *Page 846 
1989), and the certificate of final judgment was issued on January 3, 1990. The United States Supreme court denied certiorari review.Siebert v. Alabama, 497 U.S. 1032 (1990). Siebert's conviction and death sentence in the Talladega County case was affirmed on direct appeal in Siebert v. State, 562 So.2d 586 (Ala.Cr.App. 1989). The Alabama Supreme court affirmed the conviction, Ex parteSiebert, 562 So.2d 600 (Ala. 1990), and the certificate of judgment was issued on May 22, 1990. The United States Supreme Court denied certiorari review. Siebert v. Alabama, 498 U.S. 963
(1990).
Siebert filed a Rule 32 postconviction petition in each case, seeking relief from his convictions and sentences of death. Judge Sullivan presided over the Rule 32 proceedings. The petitions were filed in Lee County on June 30, 1992, and in Talladega County on August 25, 1992. Numerous claims were presented in each petition. The prosecution filed answers to these petitions on October 14, 1992 (the Talladega County case), and on July 27, 1992 (the Lee County case). Siebert's petitions were consolidated for an evidentiary hearing. Siebert subsequently filed amendments to both petitions on March 29, 1995, and the circuit court accepted the amendments. The hearing on the petitions began on April 3, 1995, and continued through April 5, 1995. The prosecution filed a written response to the amended petitions on April 4, 1995. In this amended response, the prosecution requested for the first time that the petitions be denied pursuant to Rule 32.2(c) because the two-year limitations period allowed for filing a Rule 32 petition had expired. Out of an abundance of caution, the circuit court continued to hear Siebert's arguments. Additional evidence was received by the circuit court on September 26, 1995, and on January 21, 1997. The prosecution submitted an 87 page memorandum opinion to the circuit court with proposed findings of fact and conclusions of law disposing of the claims in the petitions as procedurally barred, but nonetheless also disposing of these claims on their merits. On December 29, 1998, after considering all the evidence and independently evaluating each claim, the circuit court adopted the State's proposed memorandum opinion as its final judgment, denying Siebert the relief requested in his petitions.
The attorney general argues on appeal that the circuit court should not have addressed at the Rule 32 hearing the procedurally barred claims on the merits. See, State v. Whitley, 665 So.2d 998
(Ala.Cr.App. 1995). We agree. Because almost every claim Siebert presents is procedurally barred, we decline to address the circuit court's ruling insofar as it discusses the merits of his claims.Whitley, supra.; ("The State argues on appeal that the trial court should never have addressed the merits of the juror's failure to answer the voir dire question because this ground was procedurally barred. We agree with the State that this ground should have been, but was not, raised on appeal and it is therefore precluded under Rule 32.2(a)(5), Ala.R.Crim.P." 665 So.2d at 1001). However, we note that pursuant to Rule 45A, Ala.R.App.P., this court searched the entire transcript of each trial on direct appeal for error without regard to preservation or whether it was presented on appeal. Nothing was found to merit reversal of Siebert's conviction. Moreover, we also note that we have evaluated the evidence presented at the evidentiary hearing on Siebert's Rule 32 petition, and we conclude that Siebert received a fair trial and that the trial court correctly denied the petition.
The initial issue presented by Siebert on appeal from the denial of his Rule 32 petition is whether the circuit court correctly held that the petitions were barred from postconviction review by Rule 32.2(c) because they were filed beyond the two-year limitations period. Rule 32.2(c) provides that, with certain exceptions, a postconviction petition must be filed within two years *Page 847 
from the issuance by the Court of Criminal Appeals of the certificate of final judgment. In cases such as the present case, where a petition is filed requesting certiorari review by the Alabama Supreme Court, the Court of Criminal Appeals issues a final judgment on the date the Alabama Supreme Court completes its certiorari review and issues a final decision in the case. In this case, the certificate of judgment in the Talladega County case was issued on May 22, 1990. Pursuant to Rule 32.2(c), Siebert's petition, filed August 25, 1992, was untimely. The certificate of judgment in the Lee County case was issued on January 3, 1990. Pursuant to Rule 32.2(c), Siebert's petition filed on June 30, 1992, was untimely.
Siebert argues on appeal that his petition should not be barred by the two-year limitations period in Rule 32.2(c) for the following reasons:
 1. Rule 32.2(c) is not jurisdictional and failure to comply with it does not require dismissal of Siebert's petition.
 a. The form of Rule 32 demonstrates that Rule 32.2(c) is not jurisdictional.
 b. Rule 32.2(c) must be timely raised as an affirmative defense.
 2. The State waived this affirmative defense by failing to raise it in its first responsive pleading.
 3. The limitations period does not begin to run until a defendant's conviction is final, which he says this court has determined to be when the United States Supreme Court denies certiorari.
 4. Courts have the discretion in Rule 1.3(b) of the Alabama Rules of Criminal Procedure to enlarge the time for filing a Rule 32 petition.
In every appeal from the denial of postconviction relief under Rule 32 in a death-penalty case, this court has held that the plain-error rule does not apply in Rule 32 proceedings and that the procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed. Thompson v. State, 615 So.2d 129 (Ala.Cr.App. 1992);Cade v. State, 629 So.2d 38, 41 (Ala.Cr.App. 1993), cert. denied,511 U.S. 1046 (1994); Neelley v. State, 642 So.2d 494, 496
(Ala.Cr.App. 1993), cert. quashed, 642 So.2d 510 (Ala. 1994), cert. denied, 514 U.S. 1005 (1995); State v. Tarver, 629 So.2d 14,19 (Ala.Cr.App. 1993); Davis v. State, 720 So.2d 1006, 1013
(Ala.Cr.App. 1998); Brownlee v. State, 666 So.2d 91, 93
(Ala.Cr.App. 1995); Horsley v. State, 675 So.2d 908 (Ala.Cr.App. 1996); Grayson v. State, 675 So.2d 516 (Ala.Cr.App. 1995), cert. denied, 519 U.S. 934 (1996); Payne v. State, [Ms. CR-97-2503, July 9, 1999] ___ So.2d ___ (Ala.Cr.App. 1999); Boyd v. State,746 So.2d 364 (Ala.Cr.App. 1999); Lawhorne v. State,756 So.2d 971 (Ala.Cr.App. 1999); Jones v. State,753 So.2d 1174 (Ala.Cr.App. 1999).
Therefore, Siebert's arguments are not well taken. Claims 1.a. and 1.b., asserting that Rule 32.2(c) is not jurisdictional, were presented for the first time on appeal. Therefore, these claims are procedurally barred from appellate review. Wilkerson v.State, 686 So.2d 1266, 1277 (Ala.Cr.App. 1996) ("this claim is procedurally barred from appellate review" because it is raised for the first time on appeal).
Claim 2, asserting that Rule 32.2(c) must be raised as an affirmative defense in the first responsive pleading or it is waived, is without merit. Siebert relies on Howard v. State,616 So.2d 398 (Ala.Cr.App. 1993), and Jackson v. State, 612 So.2d 1356
(Ala.Cr.App. 1992), in support of this claim. This case, however, is distinguishable from both Howard and Jackson. In Howard andJackson, the State argued for the first time on appeal[2]
that the petition was *Page 848 
barred by the two-year limitations period. Moreover, in Jackson, this court did not have to determine whether the State had waived the time bar by failing to plead it because the circuit court had correctly denied the petition on the merits.
In the present case, Siebert filed a motion to amend his petitions on March 29, 1995, five days before the evidentiary hearing. On April 4, 1995, the second day of the hearing but the sixth day after Siebert filed his amended petitions, the State filed an amended answer claiming that the petitions were barred by limitations period. We agree with the circuit court, which stated:
 "The State's response placed Siebert on notice within seven days after Siebert filed his amended petitions. If Siebert can file amendments to his petition and have those amendments relate back to the original petition, the State can file an answer to those amendments and have it relate back to the original answer (the initial responsive pleading). Siebert had timely notice of the State's intention to rely on the statute of limitations defense and the State did not waive the statute of limitations defense."
C.R. 879-80. This court, in Garrett v. State, 644 So.2d 977, 980
(Ala.Cr.App. 1994), held that "an `amended petition' relates back to the date of the filing of the original petition provided the amended petition is filed within a reasonable time."[3] This holding is in complete accord with Rule 32.7(b), Ala.R.Crim.P., which states: "Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment," and with Rule 32.7(d), which states: "Leave to amend shall be freely granted." The granting or denial of a motion to amend a Rule 32 petition is within the sound discretion of the trial court, whose ruling on such a motion will be reversed only for an abuse of discretion. Neelley v. State, 642 So.2d 494, 497 (Ala.Cr.App. 1993).
Moreover, notwithstanding the requirement of Rule 32.3 that the State "shall have the burden of pleading any ground of preclusion," this court has repeatedly stated that "[w]here a simple reading of a petition for post-conviction relief shows that, assuming the allegations of the petition to be true, it is obviously without merit or is precluded, the trial court may summarily dismiss the petition without requiring any response from the state." Burton v. State, 728 So.2d 1142, 1148 (Ala.Cr.App. 1998) (citing Bishop v. State, 608 So.2d 345 (Ala. 1992), and Pattyv. State, 652 So.2d 337 (Ala.Cr.App. 1994)) (emphasis added). Thus, the trial court could have dismissed the petition on procedural grounds even without any response from the State.
Claim 3, asserting that the limitations period does not begin to run until a defendant's conviction is final, which this court has determined to be when the United States Supreme Court denies certiorari, is without merit. We agree with the circuit court's ruling that, for purposes of seeking postconviction relief, "[i]t is clear from Rule 32.2(c) of the Alabama Rules of Criminal Procedure and Rule 41(b) of the Alabama Rules of Appellate Procedure that Siebert's conviction was final on the date the Alabama Court of Criminal Appeals issued the certificate of judgment in both [cases]." C.R. 880.
Rule 32.2(c), Ala.R.Crim.P., states:
 "[T]he court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within two (2) years after the *Page 849 
issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala.R.App.P."
Rule 41(b), Ala.R.App.P., states:
 "The timely filing of a petition for certiorari in the Supreme Court shall stay the issuance of the certificate of judgment by the courts of appeals, which stay shall continue until the final disposition by the Supreme Court. Upon the filing of a copy of an order of the Supreme Court denying the petition for certiorari, the certificate of judgment of the courts of appeals shall issue immediately. If the time for the issuance of the certificate of judgment shall have been shortened pursuant to subdivision (a) hereof, the courts of appeals shall grant such relief, upon motion, as may be appropriate."
The plain language of the Rules and the applicable caselaw provide that a Rule 32 petition must be filed within two years from the date the Court of Criminal Appeals issues the certificate of final judgment.
Claim 4, asserting that Rule 1.3(b) ("excusable neglect") of the Alabama Rules of Criminal Procedure gives courts the authority to enlarge the time for filing a Rule 32 petition, is without merit. Siebert claims excusable neglect because, he says, he did not receive a copy of the certificates of judgment and because there is some ambiguity concerning the starting date for the running of the limitations period of Rule 32.
Rule 1.3(b), Ala.R.Crim.P., provides:
 "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for good cause shown may at any time in its discretion (1) with or without motion or notice, order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect, but it may not, except as provided elsewhere in these rules, extend the time for making a motion for new trial, for taking an appeal, or for making a motion for a judgment of acquittal pursuant to Rule 20."
In this case, the circuit court specifically held: "This Court holds that the untimely filing of Siebert's Rule 32 petitions is not the result of excusable neglect. This Court chooses not to entertain Siebert's Talladega County and Lee County Rule 32 petitions due to the untimely filing of both petitions." C.R. 881. The application of Rule 1.3(b) is discretionary with the circuit court. In this case, the circuit court chose not to entertain the late petitions. That decision was not an abuse of discretion for the following reasons. The facts that Siebert either did not have counsel in his Rule 32 petitions or that counsel did not know the time limitations imposed by the rule are not excusable neglect. First, "neither the Due Process Clause of the Fourteenth Amendment nor the equal protection guarantee of `meaningful access' require the State to appoint counsel for indigent prisoners seeking postconviction relief." Murray v.Giarratano, 492 U.S. 1, 2, (1989) (holding that Pennsylvania v.Finley, 481 U.S. 551 (1987), applies to inmates under a sentence of death as well as to other inmates). Second, "`[g]enerally, parties acting pro se should be treated as parties represented by counsel are treated. . . . In particular, pro se litigants "must comply with legal procedure and court rules."'" Wilson v. State,659 So.2d 152, 158 (Ala.Cr.App. 1994) (quoting Boros v. Baxley,621 So.2d 240, 243-44 (Ala. 1993)). Third, as stated above, the procedural bars of Rule 32 apply to cases in which the death penalty has been imposed. Thompson v. State, 615 So.2d 129 *Page 850 
(Ala.Cr.App. 1992).[4] Moreover, we note that Rule 1.3(b) specifically prohibits extending the time for a motion for new trial, for filing an appeal, or for a motion for a judgment of acquittal pursuant to Rule 20 — all postconviction proceedings, like a Rule 32 petition.
Because the petitions were filed outside of the limitations period, only the following claims can be reviewed: claims concerning the circuit court's jurisdiction to render judgment and impose sentence; claims showing that the sentence exceeds the maximum authorized by law or is otherwise unauthorized by law; claims showing that Siebert is being held in custody after the expiration of his sentence; or claims showing that newly discovered evidence was timely presented.
The circuit court correctly held that the following claims presented on appeal are barred by the limitations period. Although only one ground is necessary to bar review of a postconviction petition, the circuit court also correctly held that the following claims are barred because they either were addressed at trial and on direct appeal, Rules 32.2(a)(2) and (4), or they could have been raised at trial and then challenged on direct appeal. Rules 32.2(a)(3) and (5). Rule 32 is not a substitute for a direct appeal. Land v. State, 775 So.2d 840
(Ala.Cr.App. 1998). According to Siebert, the following claims apply to both cases unless otherwise specified.
 I. The expert psychiatric assistance afforded to Siebert by the Court in the Talladega County case failed to provide the protections guaranteed by the Fourteenth Amendment right to due process.
 I.A. Siebert was denied due process when his expert turned over his psychiatric evaluation to the prosecution.
 I.A.1. Ake v. Oklahoma, 470 U.S. 68 (1985), mandates that a defendant receive access to a competent psychiatrist to assist him in his defense if sanity will be a significant issue at trial.
 I.A.2. Dr. Eisenhardt (a psychiatric expert) did not assist in the evaluation, *Page 851 
preparation, and presentation of the defense as required by Ake.
 I.A.3. Dr. Eisenhardt's evaluation of Siebert did not constitute an "appropriate" examination under Ake.
 I.B. There is no substantive difference between the facts presented by Ford v. Gaither, 953 F.2d 1296 (1992), Cowley v. Stricklin, 929 F.2d 640 (1991), and Smith v. McCormick, 914 F.2d 1153 (1990), and the facts of Siebert's case.
 II. Siebert was denied effective assistance of counsel in both cases because defense counsel relianced on Dr. Eisenhardt's testimony as the only evidence of mitigating factors.
 III. Siebert's right against self-incrimination was violated in both cases.
 IV. Alabama Rule of Criminal Procedure, 16.2(c) is unconstitutional.
 V. Failure of defense counsel to present the testimony of Vicky Owens deprived Siebert of his right to effective assistance of counsel.
 VI. Trial counsel failed to investigate Siebert's background, and failed to conduct in-depth interviews with family members or to otherwise develop evidence relevant to an appropriate punishment.
 VII. The trial court's guilt-innocence phase jury instructions violated state and federal law and undermined the reliability of Siebert's convictions and sentences.
 VII.A. Siebert's Lee County jury was not instructed on the meaning of a critical element of Siebert's charge.
 VII.B. Both Siebert's Talladega and Lee County juries were informed that only a portion of his statement to the police was presented because the remaining parts were legally inadmissible.
 VII.C. The trial court in Lee County instructed Siebert's jury that it had to reconcile all of the testimony.
 VII.D. Both Siebert's Talladega and Lee County juries received erroneous charges on reasonable doubt.
 VII.E. The trial court `s instructions implied to Siebert's penalty phase juries that death must be presumed to be the appropriate sentence. This instruction reinforced the prosecution's argument to presume death.
 VII.F. The penalty phase jury instructions failed to inform the jurors that they could find the existence of mitigating circumstances without a unanimous vote.
 VIII. The prosecutor's misconduct and arguments before and during the guilt-innocence phase of Siebert's trials deprived him of rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and by the Alabama Constitution.
 VIII.A. The prosecutor argued that Mr. Siebert should be convicted because he would commit future illegal acts.
 VIII.B. The prosecution improperly argued the underlying facts of Siebert's prior offense.
 VIII.C. Throughout Siebert's trials, the prosecution improperly referred to other crimes allegedly committed by Siebert that had no connection to the crime charged.
 VIII.D. The prosecution elicited inadmissible direct examination testimony in an effort to enhance its key witness's credibility.
 VIII.E. The prosecution vouched for a witness's credibility during closing argument and thereby denied Siebert a fair trial and violated his rights under Alabama Law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 VIII.F. During the guilt phase closing arguments, the district attorney urged the jury that Siebert must be guilty since his charge resulted from the work of various law enforcement agencies and that he knew Siebert was guilty. *Page 852 
 VIII.G. The prosecution's adverse comment on Siebert's choice not to testify violated his rights under Alabama law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 VIII.H. Victim-impact evidence violated Siebert's rights as guaranteed by Alabama law, The Alabama Constitution, and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 VIII.I. The prosecution's pleas that Siebert should receive death because of victims' characteristics were impermissible under Alabama Law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 VIII.J. The State elicited highly inflammatory testimony on matters wholly irrelevant to the charges against Siebert.
 VIII.K. The prosecution argued to the guilt phase jury that it is proper to infer that a defendant intends the natural consequences of his acts.
 IX. The prosecutor's misconduct and arguments before and during the penalty phases of Siebert's trials deprived him of rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and by the Alabama Constitution.
 IX.A. The prosecution argued to Siebert's penalty phase jury that it should presume death to be the appropriate sentence.
 IX.B. The prosecutor argued to the Talladega penalty phase jurors that Siebert's trial counsel had lied to and misled them.
 IX.C. The prosecution relied on facts not in evidence in arguing to Siebert's penalty phase jury that death was the appropriate sentence and thereby denied Siebert his rights guaranteed by Alabama law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 IX.D. The prosecution illegally argued that Siebert should be sentenced to death because his offense was heinous, atrocious or cruel despite inapplicability of that aggravating circumstance.
 IX.E. The prosecution argued to Siebert's penalty phase jury that his sentence should be decided on the basis of the underlying offense alone and to the exclusion of his moral culpability in violation of his rights under Alabama law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United State's constitution.
 IX.F. The State introduced numerous highly inflammatory photographs and inflammatory videotapes.
 IX.G. The prosecution improperly suggested to the empaneled jurors that two of their number were alternates.
 X. In both the Talladega County case and the Lee County case, the evidence supporting the aggravating circumstance that the defendant had previously been convicted of a violent felony was improperly considered.
 XI. The Court's penalty-phase orders demonstrate that Siebert's sentence of death is illegal and unconstitutional.
 XI.A. In sentencing Siebert to death the trial court failed to find various undisputed mitigating circumstances, in violation of Siebert's rights under Alabama Law and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 XI.B. Siebert's death sentence rests on non-statutory aggravating circumstances in violation of his rights under Alabama law and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 XI.C. The trial court double counted a single aggravating circumstance in violation of Siebert's rights under Alabama law and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. *Page 853 
 XII. Siebert's conviction and death sentence in the Lee County case cannot stand because they are based on a duplicitous indictment, in violation of Alabama law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 XIII. Siebert's Lee County trial was "poisoned" by emotional outbursts.
 XIV. The trial court's reliance on the presentence investigation report admitted into evidence in sentencing Siebert to death violated Siebert's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under Alabama law.
 XIV.A. Both in the Lee County and Talladega County trials Siebert's presentence investigation report improperly included various incriminating admissions by Siebert, in violation of Alabama law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 XIV.B. In both cases, the presentence reports contained impermissible references to Siebert's juvenile record.
 XIV.C. In both cases, the probation officer offered improper statements regarding her view and the community opinion that Siebert should receive the death penalty. These recommendations denigrated the jury's statutory role in recommending punishment.
 XV. The trial court made other errors when sentencing Siebert to death.
 XV.A. In both cases, the trial court failed to follow the law when determining sentence.
 XV.B. Separating the jury without first ensuring that Siebert adequately understood his right to demand sequestration violated Siebert's rights under Alabama law and under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 XV.C. Failure to instruct the penalty phase jury on how to determine when the factual existence of a mitigating circumstance is placed in dispute violated Siebert's rights under Alabama law and under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 XVI. It was error for the trial court to deny Siebert's claims that he was denied effective assistance of counsel during both of his capital proceedings.
 XVI.A. Siebert specifically incorporates prior sections of this brief to establish his claims of ineffective assistance of counsel.
 XVI.B. Counsel failed to ensure that Siebert adequately understood that he had the right to a sequestered jury.
 XVI.C. Trial counsel rendered ineffective assistance of counsel when they failed to object to prosecutorial misconduct at Siebert's trials. Direct appeal counsel was ineffective for failing to raise these claims on appeal.
 XVI.D. Trial counsel failed to object to improper victim impact testimony, arguments and outbursts.
 XVI.E. Counsel failed to adequately challenge the use of prior convictions at Siebert's trials.
 XVI.F. Counsel did not raise at trial or on appeal the improper statements, admissions and recommendations included in the presentence investigation report.
 XVI.G. Counsel failed to challenge the trial court's failure to find mitigating circumstances.
 XVI.H. The trial court's improper sentencing order was not challenged at trial or on direct appeal.
 XVI.I. Former counsel did not challenge the multiplicious indictment against Siebert.
 XVI.J. Trial counsel failed to object to erroneous instructions given by the trial court at the guilt/innocence phase.
 XVI.K. Siebert's counsel did not insist upon adequate jury instructions.
 XVI.L. Appellate counsel rendered ineffective assistance of counsel when they *Page 854 
failed to raise and preserve for review the claims presented in Siebert's petition.
Siebert presents the following claims as newly discovered evidence.
Siebert claims that several members of his Talladega County jury failed to reveal during voir dire crucial information that suggested that these jurors were potentially biased against Siebert and that they held preconceived beliefs regarding Siebert's particular case and death-penalty cases in general that deprived Siebert of his right to due process, a fair trial, and a reliable sentencing determination.
The trial court correctly ruled that Siebert's jury misconduct claims are barred from Rule 32 review by Rule 32.2(a)(3) and (5) because these claims could have been, but were not, raised at trial and on direct appeal. Siebert relies onState v. Freeman, 605 So.2d 1258 (Ala.Cr.App. 1992), to assert that this claim is not procedurally barred. Brown v. State, [Ms. CR-98-0343, October 1, 1999] ___ So.2d ___, ___ (Ala.Cr.App. 1999), overruled Freeman and states that: "[b]efore a claim of juror misconduct may be addressed on the merits in a postconviction petition the petitioner must meet the requirements of newly discovered evidence contained in Rule 32.1(e), Ala.R.Crim.P." This ruling is consistent with Holladay v. State,629 So.2d 673 (Ala.Cr.App. 1992), an opinion released the same year as Freeman, wherein "this court held that we could not consider a claim of juror misconduct because there was no evidence that this claim could not have been raised on direct appeal."Brown, ___ So.2d at ___ (citing Holladay). In order to be considered newly discovered evidence, the evidence must meet each of the criteria set forth in Rule 32.1(e)(1) through (5), Ala.R.Crim.P.
 "Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
". . .
 "(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
 "(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
 "(2) The facts are not merely cumulative to other facts that were known;
 "(3) The facts do not merely amount to impeachment evidence;
 "(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
 "(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."
Siebert did not plead sufficient facts to establish that his jury misconduct claims amounted to newly discovered evidence. Thus, the claim fails to satisfy either the burden of proof requirements of Rule 32.3, Ala.R.Crim.P., or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Because the claim cannot be considered newly discovered evidence, the trial court correctly ruled that the claims are barred by Rules 32.2(a)(3) and (5).
Siebert claims as newly discovered evidence that the prosecution failed to turn over to the defense statements made by a key witness, Stephen Laney, in the trial of the Talladega County case, which violated Siebert's rights, and requires a new trial. The trial court ruled as follows on this claim. *Page 855 
 "Siebert alleged the following in claim III of the amendment to his Rule 32 petition:
 "`Mr. Siebert's rights to discovery under former Rule 18, Alabama Rules of Criminal Procedure (Temporary) and his right to confrontation and to due process under the Federal and State Constitution, as interpreted by the Supreme Court of Alabama in Ex parte Monk, 557 So.2d 832 (1989), were violated.
 "`The crux of the defense in this case was the contention that Linda Jarman, was not killed in the course of a first degree robbery[, because Siebert had permission from the victim to use the victim's vehicle before her death].
 "`A critical aspect of the evidence adduced by the State on the issue of defendant's intent to rob [the victim] of her car was Stephen Laney's testimony.'
 "Although this Court holds that this claim procedurally is barred, in the alternative, it will address the merits. Stephen Laney, a neighbor of Siebert's, who lived in the Porter building, testified that he saw Siebert on the night of the murder loading trash bags, filled with some of the victim's `stuff,' into the victim's vehicle. (TR. 213)[5]. Siebert informed Laney he had borrowed the victim's vehicle, he and the victim had a fight, and he was returning some of the victim's belongings to her. (TR. 213-14.) The evidence Laney presented to the jury initially developed during a fourth interview conducted by the Talladega Police Department on April 25, 1986. Siebert contends that the State improperly withheld three sets of notes from previous interviews with Laney which were required to be disclosed under Brady v. Maryland, 373 U.S. 83 (1963), and Ex parte Monk, 557 So.2d 832, 835 (Ala. 1989). Siebert contends that three sets of interview notes with Laney never mentioned the encounter Laney had with Siebert on the eve of the murder. Siebert contends that `[w]ithout the [previous] statements, defense counsel could not follow-up his attack on Mr. Laney's credibility.'
 "Siebert had the burden of pleading and proving this claim by a preponderance of the evidence at the evidentiary hearing. See, Rule 32.3, Alabama Rules of Criminal Procedure; see also, Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App. 1994) cert. denied, 516 U.S. 846, 116 S.Ct 137 (1995). Siebert presented no credible evidence in support of this claim at the evidentiary hearing. Therefore, this claim of the petition is due to be denied."
C.R. 888-89.
This claim fails to establish newly discovered evidence. Siebert did not establish the criteria required under Rule 32.1(e). Therefore, the claim is barred by the two-year limitations period and because it should have been raised at trial and on direct appeal. Rule 32.2(a)(3) and (5), and Rule 32.2(c). Moreover, the circuit court's ruling that "Siebert presented no credible evidence in support of this claim at the evidentiary hearing," is supported by the record. Siebert did not prove at the Rule 32 hearing that the State suppressed any exculpatory documents.
Siebert also claims that the prosecution failure to turn over mitigating evidence material to the sentencing phase of Siebert's trials is newly discovered evidence. The trial court ruled as follows on this claim.
 "Siebert alleged the following in claim IV of the amendment to his Rule 32 petition: *Page 856 
 "`Mr. Siebert's right to present mitigating evidence pursuant to Ala. Code §§ 13A-5-51, 13A-5-52, and the Eighth and Fourteenth Amendments to the U.S. Constitution, and his right to due process under the U.S. and Alabama Constitutions, were violated because the prosecution failed to turn over evidence and other materials which could have been presented to the jury as mitigating factors at Mr. Siebert's sentencing phase of his trial as required under Brady v. Maryland, 373 U.S. 83 (1963).'
 "Although this Court holds that this claim is procedurally barred, in the alternative, it will address the merits. Siebert claims the prosecution withheld evidence of Siebert's `drug use and physical abuse which would have corroborated the testimony of Dr. Otto Eisenhardt regarding the personal history communicated to him by Siebert.' Eisenhardt testified that the only evidence he had of Siebert's drug use and physical abuse was that provided by Siebert himself. (T.R. 774.) Siebert contends that, if the withheld information had been provided, Eisenhardt's testimony would have been bolstered; creating a reasonable probability the jury would not have imposed the death penalty.
 "Rod Giddens, one of Siebert's defense attorneys, testified at the Rule 32 evidentiary hearing that Eisenhardt's report did contain information about Siebert's alcohol, physical, and sexual abuse. (R. 38.) Giddens was aware of information concerning Siebert's sexual and physical abuse before obtaining Eisenhardt's report. (R. 77.) Giddens felt there was nothing else to pursue for a mental health defense for the guilt or penalty phase. In addition, Giddens felt it was not a good idea to present evidence of Siebert's drug abuse as mitigation. (R. 101.)
 "Siebert states in paragraph 25 of his amendment to his Rule 32 petition that `the prosecution failed to disclose to defense counsel documents material to Siebert's punishment phase of his trial.' Siebert did not state in his petition or at the evidentiary hearing what documents the prosecution failed to disclose. Giddens testified he had no knowledge of any information that was withheld by the district attorney during the discovery process. (R. 89.) Likewise, George Sims, Siebert's other defense attorney, testified he did not remember asking for anything which the district attorney had which was not turned over. (R. 125.) Siebert had the burden of pleading and proving this claim by a preponderance of the evidence at the evidentiary hearing. See, Rule 32.3, Alabama Rules of Criminal Procedure. Siebert presented no credible evidence in support of this claim at the evidentiary hearing. This claim of the petition is therefore due to be denied."
C.R. 890-91.
This claim fails as newly discovered evidence. Siebert did not establish the criteria required under Rule 32.1(e). Therefore, the claim is barred by the two-year limitations period and because it should have been raised at trial and on direct appeal. Rules 32.2(a)(3) and (5), and Rule 32.2(c). Moreover, the circuit court's ruling that "Siebert presented no credible evidence in support of this claim at the evidentiary hearing" is supported by the record. Siebert did not prove at the Rule 32 hearing that the State suppressed any documents that contained exculpatory material.
Siebert's Rule 32 petitions are due to be denied for the reasons set forth above.
AFFIRMED.
Long, P.J., McMillan, and Fry, JJ., concur; Baschab J., concurs in result only.
[1] An overview of the facts are presented below. A full statement of the facts are contained in this court's opinions on direct appeal. See, Siebert v. State, 555 So.2d 772 (Ala.Cr.App. 1989) (Weathers case); Siebert v. State, 562 So.2d 586 (Ala.Cr.App. 1989) (Jarmin case).
The Weathers case:
In late December 1985, Donald Hendron left Los Angeles, California, driving east. Hendron was going to Talladega, Alabama, where he was to operate a theater program at the Alabama Institute for the Deaf and Blind (hereinafter referred to as the Institute). In Tucson, Arizona, Hendron picked up a man who identified himself as Danial Spence. Hendron identified the appellant as that man. Hendron was impressed with appellant's artistic talent and asked him to come to Talladega and work with the theater program as a set designer. Appellant agreed. Hendron and appellant parted company just north of Jackson, Mississippi. Appellant was hitchhiking north to Illinois to visit his parents. Hendron arrived in Talladega on January 9, 1986. Appellant arrived there on January 20, 1986.
 "Hendron and appellant first shared an apartment at the Institute, then moved into another apartment in the Porter Building approximately a week and a half later. . . . Shortly after the two men moved into the Porter Building, appellant began dating Sherri Weathers, a 24-year-old deaf student at the Institute. Because such a relationship was specifically prohibited by the Institute's rules, Hendron wished to separate himself from this situation, and moved out of the Porter Building apartment on February 16, 1986. Hendron and appellant saw each other for the last time on February 19, 1986, when Hendron arranged to pick up appellant around 8:00 a.m. the next morning to attend a faculty meeting. When Hendron went by the Porter Building the next morning, however, appellant was not there.
 "In February 1986, Sherri Weathers was living in apartment 30 of the Sunrise Apartments with her sons, five-year-old Chad and four-year-old Joey. Around 8:00 p.m. on February 19, 1989, appellant was seen with Sherri Weathers and a neighbor of hers, Linda Jarman, buying beer at a convenience store in Talladega. The three left the convenience store together. Fettus Porter, a neighbor of Sherri's, returned home around 9:30 p.m. that night and found a note from Sherri asking him to come over and play cards with her, Linda Jarman, and appellant. Porter went over to Sherri's apartment around 10:30 p.m., where he found Sherri and Linda chatting. They told Porter that appellant had left in Linda's car, a cream-colored Buick, to get some beer, and said they all were going to play cards when appellant returned. Porter remained at the apartment until about 11:30 or midnight. When he left to go back to his apartment, appellant still had not returned.
 "Sometime during the night of February 19, 1986, Catherine Elaine Shellborne, who lived next door to Sherri Weathers in apartment 31 of the Sunrise apartments, heard through her wall adjoining Sherri's apartment a man saying `Come to me. You can join your mother.' Later, she heard the man say, `Come on and you will be with your mother and your brother.'
 "Billy Kyle, another resident of the Sunrise Apartments, saw Sherri Weathers fighting with appellant in her apartment on the night of February 19, 1986. When asked what time he observed them fighting, Billy, a mildly retarded deaf man, could only say that it was sometime after 8:00 p.m., the time he arrived home. By Sunday, February 23, 1986, Billy had not seen Sherri or her children around the apartments. Remembering the fight he had seen between Sherri and appellant in her apartment on Wednesday night, Billy tried to check on Sherri, but could summon no one to the door of apartment 30. By this time Billy was extremely concerned about the welfare of Sherri and her children, so he entered Sherri's apartment through an unsecured window, but when he saw a part of Sherri's body protruding out from under a sheet, he became scared and left. Billy Kyle was later cleared by the police of any involvement in the murders.
 "The next morning, however, Billy told Wanda Hunley, an Institute social worker, that he was concerned about Sherri and asked her to check on Sherri and her sons. After making several phone calls, she learned that no one had seen Sherri or her children in several days. She also learned that there was an odor emanating from apartment 30. Ms. Hunley, accompanied by several other individuals, then went to the Sunrise Apartments and obtained a passkey for apartment 30. Upon entering the apartment, Ms. Hunley and the others found the bodies of Sherri, Chad, and Joey Weathers.
 "Autopsies of the bodies of the three people disclosed that Sherri Weathers died as the result of strangulation, and that Chad and Joey Weathers died as the result of ligature strangulation."
Siebert v. State, 555 So.2d 772, 773-74 (Ala.Cr.App. 1989).
An extensive investigation was launched and physical evidence placing appellant at the murder scene was discovered. In March 1986, a 1973 Buick was found abandoned near Elizabethtown, Kentucky. Additional evidence was found at this location tieing the appellant to the murders. The appellant was finally apprehended in Hurricane Mills, Tennessee, on September 5, 1986. At the time of his arrest, appellant had in his possession evidence tying him to the murders.
 "After appellant was advised of his Miranda rights and waived those rights, he made a statement, the pertinent part of which follows:
 "He went to Sherri Weathers's apartment on the evening of February 19, 1986, and let himself in with a key which he had been given. Sherri and Linda Jarman were there. Eventually, Linda left. As he and Sherri were walking toward her bedroom, he strangled her with a piece of cloth that he had on his person. Then he woke up each of the boys individually and strangled them. He left town in a car, which he abandoned in Kentucky after it had two flat tires. After spending a couple of days at a campsite he set up near the car, he headed north and then went east, in an attempt to get as far away from Alabama as he could."
Siebert v. State, 555 So.2d 772, 775 (Ala.Cr.App. 1989).
The Jarman case:
 The appellant arrived and settled in Talladega as discussed above.
 "On February 19, 1986, the appellant ate lunch at the apartment of a neighbor, Stephen Laney, with Laney and Laney's girl friend, Linda Odom. . . . Thereafter, the appellant asked Laney for a ride to the apartment of his girl friend, Sherry Weathers. After Laney dropped him off, the appellant spent some time at his girl friend's apartment, where the victim, Linda Jarman, was apparently also present. Linda Jarman, who was also deaf, was a teacher at the E. H. Gentry School and knew the appellant through her work there and because she lived next door to his girl friend, Sherry Weathers.
 "Linda Jarman owned a yellow 1973 Buick automobile, which the appellant borrowed with her permission. He then drove back to his apartment, where Stephen Laney observed him carry large green trash bags downstairs. The appellant told Laney that he had borrowed his girl friend's automobile and was returning some of her `stuff' because they had had a fight. The appellant returned to Sherry Weathers's apartment, where he spent some time. Upon leaving that apartment, he walked next door to Linda Jarman's apartment. He spent an hour or two there, drinking wine with her. They then went into the bedroom, partially clothed, and lay down upon the bed, where he murdered her by strangling her. He then took her stereo and her car and fled Talladega. Approximately 13 days later, Linda Jarman's automobile was found with a flat tire, abandoned on the side of a highway in Kentucky. A camp site was discovered off the highway and in the vicinity of the abandoned automobile. Evidence linking the appellant to the site was also found. He was thereafter apprehended in Tennessee."
Siebert v. State, 562 So.2d 586, 588 (Ala.Cr.App. 1989).
[2] At the end of all the testimony in Jackson, the Staterenewed its motion to dismiss the petition because it was filed outside the time bar of Rule 32.2(c). However, there was no indication in the record that an earlier motion to dismiss on this ground had been made.
[3] In Garrett the circuit court ordered the petitioner to amend and resubmit his petition to conform to the form prescribed by Rule 32. The amended petition related back to the date of the filing of the original petition because it was timely resubmitted, i.e., within a reasonable time. This court also stated that 28 days was a reasonable time within which to resubmit a petition.
[4] Alabama's Equal Justice Initiative (hereafter EJI) not only provides consultation services to attorneys representing death-row inmates, it also provides direct representation to death-row inmates and recruits volunteers to represent the inmates. Unfortunately, limited funding and "the sheer volume of death-penalty cases sometimes overwhelms" the EJI's ability to handle its cases, and makes meeting procedural deadlines an arduous task. Roscoe C. Howard, Jr., The Defunding of the Post ConvictionDefense Organizations as a Denial of the Right to Counsel, 98 W. Va. L. Rev. 863, 921 n. 261 (1996). Rule 32's two-year deadline is sufficient to "accommodate the competing social interest of finality [and] fairness . . . in capital cases." Comment, Optingfor Death: State Responds to the AEDPA's Opt-In Provisions andthe Need for a Right to Post-Conviction Counsel, 1 U. Pa. J. Const. L. 661, 663 (1999). The purpose of the deadline is to encourage capital prisoners, who have a stake in delaying subsequent procedures as long as possible, to file their petitions in a timely manner. Kara Thompson, The ABA's Resolution Callingfor a Moratorium on Excecutions: What Jurisdictions Can Do toEnsure that the Death Penalty is Imposed Responsibly, 40 Ariz. L. Rev. 1515, 1518 (1998). We note for instance, that the State Supreme Court of California "took over recruitment of capital defense lawyers from the state's [postconviction defense organization] because it felt the center was delaying recruitment of attorneys to delay litigation." Howard, supra, at 919. However, the California court found it difficult to find qualified counsel to represent its death-row inmates. Howard, supra, at 919-920. A two-year limitation provides the death-row inmate ample time to obtain counsel and provides counsel ample time to become familiar with the case and to prepare the petition. This court is not inclined to excuse death-penalty inmates from the procedural rules of Rule 32. However, this court would encourage the circuit court to be prompt when appointing an indigent death-penalty inmate counsel for Rule 32 proceedings. We would also encourage the Legislature to reconsider the allocation of funding to the EJI. Providing indigent death-penalty inmates a pool of competent attorneys from which to find competent representation surely decreases the overall delays in handling the death-penalty caseload, which ultimately decreases the cost of such litigation to the taxpayers. Howard, supra, at 915.
[5] References to the record in the trial court's order are as follows: references to the transcript of the Talladega County trial appear as (TR. ___), and references to the April 3-5, 1998, Rule 32 evidence hearing transcript will appear as (R. ___). *Page 857