**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-20398
_____

CHRISTOPHER J. EMERSON,

Petitioner - Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent - Appellee.
_____

Appeals from the United States District Court
for the Southern District of Texas
_____
March 15, 2001

Before JOLLY, MAGILL[*] and BENAVIDES, Circuit Judges.

MAGILL, Circuit Judge:

Christopher J. Emerson filed a habeas petition in district court, challenging the constitutionality of his Texas state court conviction for aggravated sexual assault. A magistrate judge dismissed Emerson's petition as time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Emerson appeals, and we vacate the judgment and remand for further proceedings.

I.

A Texas jury convicted Emerson of aggravated sexual assault,

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

and the trial court sentenced him to thirty-five years imprisonment. After Emerson exhausted direct review of his conviction, he filed a state habeas application, which the Texas Court of Criminal Appeals denied on June 21, 1995. On June 26, 1995, Emerson submitted a motion to the Texas Court of Criminal Appeals entitled "Suggestion That The Court Reconsider On Its Own Motion the denial of the Application for Writ of Habeas Corpus," which the court denied on January 29, 1997.

On January 28, 1998, pursuant to 28 U.S.C. § 2254, Emerson filed a habeas application in federal district court. A magistrate judge dismissed Emerson's petition as time-barred under AEDPA. This Court granted Emerson a Certificate of Appealability on the issue of "whether his state motion for reconsideration toll[ed] his one-year limitations period" and made his petition timely.

## II.

We review de novo the district court's denial of Emerson's habeas application on procedural grounds. Johnson v. Cain, 215 F.3d 489, 494 (5th Cir. 2000). AEDPA applies to this case because Emerson filed his federal habeas petition on January 28, 1998, after AEDPA's effective date, April 24, 1996. See Williams v. Cain, 125 F.3d 269, 274 (5th Cir. 1997). AEDPA places a one-year limitations period on applications for federal habeas relief. 28 U.S.C. § 2244(d)(1) (1996). Emerson's conviction became final before AEDPA's effective date, so Emerson had one

year from April 24, 1996, to file his federal habeas petition. See Smith v. Ward, 209 F.3d 383, 384 (5th Cir. 2000). This one-year period is tolled, however, during the time that Emerson submitted a "properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). The question presented in this case, therefore, is whether Emerson "properly filed" his motion, entitled "Suggestion That The Court Reconsider On Its Own Motion the denial of the Application for Writ of Habeas Corpus," under Texas law.

As an initial matter, the State argues that Emerson did not "file" his suggestion for reconsideration with the Texas Court of Criminal Appeals. We disagree. In Artuz v. Bennett, 121 S. Ct. 361 (2000), the Supreme Court held that a habeas application is "filed" "when it is delivered to, and accepted by, the appropriate court officer for placement in the official record." Id. at 363. Emerson delivered his suggestion for reconsideration to the court, and the court noted in its docket sheet that Emerson had delivered a "mot for recon." We therefore conclude that Emerson "filed" his suggestion for reconsideration.

The next question is whether Emerson "properly" filed his suggestion for reconsideration under Texas law. In Artuz, the Court examined whether a petitioner properly filed his state habeas application under New York law. The government claimed that two state statutes, which barred both raising issues that a court had previously decided and raising claims not raised on

3

direct appeal, presented procedural bars to the petitioner's claims, thereby making the petitioner's application improperly filed. 121 S. Ct. at 363. In other words, the government argued that a state habeas application is not properly filed under § 2244(d)(2) "unless it complies with all mandatory state-law procedural requirements that would bar review of the merits of the application." Id.

The Artuz Court began by defining a habeas application as "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Id. Compare Villegas v. Johnson, 184 F.3d 467, 470 & n.2 (5th Cir. 1999) (defining a habeas application as "properly filed" if it conforms with the state's procedural filing requirements, i.e., "those prerequisites that must be satisfied before a state court will allow a petition to be filed and accorded some level of judicial review"). As examples of "the applicable laws and rules governing filings," the Court listed "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." 121 S. Ct. at 364. The Court concluded that the question whether a petitioner has properly filed an application "is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." 121 S. Ct. at 364. In concluding that the petitioner properly filed his state habeas application, the Court differentiated statutes that set forth a

4

condition to filing from statutes, such as the New York laws at issue in Artuz, that set forth a condition to obtaining relief. Id. at 365. Accordingly, the Court held that even if the petitioner failed to comply with the state laws at issue, he nevertheless properly filed his state habeas application for purposes of § 2244(d)(2). Id.

In a number of pre-Artuz cases, this Court analyzed whether habeas petitioners "properly filed" their applications under state law. In Villegas, for instance, we examined whether the petitioner had "properly filed" his state habeas application when the Texas state courts had dismissed the application pursuant to Tex. Code Crim. P. art. 11.07, § 4, which precludes consideration of a successive habeas application unless: (1) the application alleges facts establishing that the basis for the claim was unavailable when the petitioner filed the previous application; or (2) if no rational juror could have found the petitioner guilty had the constitutional violation not occurred. Tex. Code Crim. P. Ann. art. 11.07, § 4 (West 2000); 184 F.3d at 472 n.4. We noted that although article 11.07, § 4 discouraged successive habeas applications, it also informed prospective petitioners that courts would accept and review successive petitions, thereby holding out the possibility of a successful successive petition. 184 F.3d at 472 n.4. Therefore, we held that the petitioner "properly filed" a successive application under Texas law. Id. at 473.

Similarly, in Smith, 209 F.3d 383, this Court held that the petitioner "properly filed" his state habeas application despite La. Code Crim. P. art. 930.8A, which imposes a three-year limit for filing habeas applications, but provides discretion to state courts to consider untimely applications under certain circumstances. Id. at 384. We noted that article 930.8A does not pose an absolute bar to filing; indeed, Louisiana courts accept and review petitioners' applications to determine whether any of the statutory exceptions to untimely filing are applicable, thereby holding out the possibility of a successful untimely petition. Id. at 385.[1]

We recently reexamined the "properly filed" requirement in Williams. 217 F.3d 303. Under Louisiana Supreme Court Rule X, § 5(a), the petitioner had thirty days from the intermediate state appellate court's denial of his application for a supervisory writ to file an application for a supervisory writ in the Louisiana Supreme Court. Id. at 304. Despite this rule, the petitioner did not file his application with the Louisiana Supreme Court until May 1995, fourteen months after the intermediate appellate court's denial of his application. Id. In April 1997, the Louisiana Supreme Court rejected the petitioner's application. Id. The petitioner then filed a

---

[1]The Artuz Court, citing Smith, stated that it expressed no view on "whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." 121 S. Ct. at 364 n.2.

6

federal habeas petition in July 1997, contending that §
2244(d)(2) applied to suspend AEDPA's one-year limitations period
until the Louisiana Supreme Court denied his application for a
supervisory writ.  Id.  In rejecting the petitioner's contention,
the Williams court distinguished Villegas and Smith by pointing
out that the statutes at issue in those cases required the state
courts to examine "issues related to the substance of the state
applications to determine whether the applications fell within a
clearly-defined exception to the time requirements."  Id. at 309.
By contrast, we noted that the rule at issue in Williams provided
no exceptions and therefore required no examination of the
merits.  Id.

Just as in Williams, the rule at issue here seemingly
provides no exceptions and does not require an examination of the
merits of Emerson's claims.  When Emerson filed his suggestion
for reconsideration with the Texas Court of Criminal Appeals, Tex
R. App. P. § 213(b) provided: "No motions for rehearing or
reconsideration will be entertained from a denial of relief
without docketing of the cause.  The court, however, may on its
own motion, reconsider such initial disposition."  Tex R. App. P.
§ 213(b) (Vernon's Supp. 1995).  Section 213(b) provided no
exception to its prohibition of habeas petitioners from filing
motions for reconsideration, leaving the Texas Court of Criminal
Appeals without any need to examine the merits of Emerson's
underlying claims.  Moreover, there is no evidence that the Texas

7

Court of Criminal Appeals considered Emerson's motion to be properly filed; indeed, the court declined to reconsider its decision without opinion.

Although we are cognizant of the limitations of post-enactment legislative history, we find additional support for our interpretation of § 213(b) in the provision's recent amendment. In 1997, § 213(b) was superseded by Tex. R. App. P. 79.2(d), which provides: "A motion for rehearing an order that denies habeas corpus relief under Code of Criminal Procedure, articles 11.07 or 11.071, may not be filed. The Court may on its own initiative reconsider the case." Tex. R. App. P. 79.2(d) (West 2000). To the extent that § 213(b) was unclear, Rule 79.2(d) unambiguously directs state habeas petitioners not to file motions for rehearing. Moreover, a comment to Rule 79.2(d) states: "This is former Rule 230, and <u>the portion of former Rule 213 that prohibited motions for rehearing</u>." Tex. R. App. P. § FIVE, R. 79, Refs & Annos (emphasis added). This comment demonstrates the legislature's understanding that § 213(b) barred state habeas petitioners such as Emerson from filing motions for rehearing and reconsideration. Furthermore, the comment to Rule 79.2(d) continues by noting the legislature's intent to make two substantive changes unrelated to the filing of motions to reconsider denials of habeas relief and then states: "Other nonsubstantive changes are made." <u>Id.</u> This comment suggests that the legislature understood § 213(b) as we do, i.e.,

8

preventing state habeas petitioners from filing motions for reconsideration.

However, the Texas Court of Criminal Appeals has entertained motions for reconsideration, notwithstanding the language in § 213(b) or Rule 79.2(d). See Ex parte Graham, 853 S.W.2d 565 (Tex. Crim. App. 1993); Ex parte Smith, 977 S.W.2d 610 (Tex. Crim. App. 1998) (en banc); Ex parte Lemke, 13 S.W.3d 791 (Tex. Crim. App. 2000). In Graham, after the Texas Court of Criminal Appeals denied the state habeas petitioner's application for relief, the petitioner filed a motion requesting the court to reconsider its denial. 853 S.W.2d at 566. The court, citing § 213(b), agreed to reconsider its initial denial, though stating that it reconsidered its prior decision on its "own motion." Id. Similarly, in Smith, the Texas Court of Criminal Appeals dismissed a state habeas petitioner's application for post-conviction relief. 977 S.W.2d at 610. The petitioner then filed a "suggestion for reconsideration," which the court considered before rejecting. Id. at 610 n.1. Recently, in Lemke, a state habeas petitioner filed a "Motion for Reconsideration (On the Court's Own Motion) of the Refusal to Grant Relief in Application for Writ of Habeas Corpus." 13 S.W.2d at 793. The court "granted the Motion for Reconsideration and filed and set the instant application for submission." Id. Therefore, the Texas courts have provided state habeas petitioners with the hope that a motion or suggestion for reconsideration may be successful.

9

Meanwhile, we are unable to find a single case in which the Texas courts have held that § 213(b) does not permit the filing of a motion for reconsideration.

Although we might have read § 213(b) to prohibit Emerson's suggestion for reconsideration, given Texas case law, as well as the Artuz Court's broad reading of the phrase "properly filed," we must conclude that Emerson "properly filed" his suggestion for reconsideration. Cf. Barr v. City of Columbia, 378 U.S. 146, 149 (1964) (holding that state procedural rules that are not "strictly or regularly followed" may not bar Supreme Court review). In short, we defer to Texas courts' application of state law. Additionally, part of the congressional rationale in passing AEDPA stemmed from a desire to require habeas petitioners to exhaust their claims in state courts. However, since habeas petitioners such as Emerson may be unable to predict whether the Texas courts would apply the literal language of § 213(b) or the holdings of Graham, Smith, and Lemke, many would bypass possible state court consideration of their claims and move directly to federal court. See Villegas, 184 F.3d at 472; see also Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998) ("Nor should we discourage petitioners from exhausting all their claims in state court, even by means of a second or subsequent petition for post-conviction relief where permissible under state law, before seeking habeas review in federal court.").

The State contends that since there is no prescribed period

10

for filing a suggestion for reconsideration or for a Texas court to reconsider the denial of habeas relief on its own motion, then Emerson's argument that the state writ should be considered pending during the period in which the court could reconsider its decision on its own motion would result in the statute of limitations tolling indefinitely until a federal habeas petition is filed.  However, our holding does not have such a broad reach. We simply hold that, given Artuz and Texas case law allowing habeas petitioners to file suggestions or motions for reconsideration, AEDPA's one-year statute of limitations is tolled during the period in which a Texas habeas petitioner *has filed* such a motion.  The tolling lasts only as long as the Texas courts take to resolve the motion or suggestion for reconsideration.  See Villegas, 184 F.3d at 472.  Finally, the Texas courts have the ability to alleviate the State's concerns by sanctioning petitioners who abuse the judicial process.  See id. at 473.

## III.

Emerson's suggestion for reconsideration of the Texas Court of Criminal Appeals' decision tolled AEDPA's one-year limitations period.  We therefore VACATE the judgment and REMAND for further proceedings consistent with this opinion.

11